THE MAYOR AND ALDERMEN OF JERSEY CITY, APPELLANT, v. PUBLIC SERVICE RAILWAY COMPANY, RESPONDENT.

Argued January 20, 1925—Decided June 19, 1925.

1. The laying of a new pavement upon a highway is not considered a "repair" under our system of jurisprudence, the relaying being a public improvement, the cost of which may be assessed upon abutting owners to the extent to which their property is specially benefited, while the cost of repair of an existing pavement is not an improvement so assessable, but must be paid by the municipality out of the funds raised by taxation.

2. A consent of a municipality, granted to a street railway company, to lay tracks on a public street, upon condition that said company shall keep the pavement between the rails and for a space of two feet on the outside thereof, in good repair, and according to the requirements of the municipal authorities, so long as it shall enjoy the use of said tracks, does not impose upon such railway company the duty of paying a proportionate part of the costs of a new pavement, whenever the municipality shall determine that such improvement shall be made.

On appeal from the Hudson County Circuit Court.

For the appellant, *Thomas J. Brogan* and *Charles Hershenslein.*

For the respondent, *William H. Speer.*

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. This action was brought by the municipality of Jersey City against the Public Service Railway Company to recover from the latter a proportionate part of the cost of repaving one of the public highways in that municipality, and known as Montgomery street.

The case was tried on the following stipulation of facts: In 1859 the legislature of the state incorporated the Jersey City and Bergen Railroad Company, and granted it permission to construct and lay a track of iron rails in the centre of Montgomery street and to operate a street railroad thereon, provided the company should first obtain the consent of the municipality to do so. The municipality granted its consent upon certain conditions, the only one of which that has any relevancy to the present litigation being as follows: "The said company shall keep the pavement between the rails and for a space of two feet on the outside thereof in good repair, at their own expense, and according to the requirements of the common council or their officers, so long as they shall enjoy the use of said tracks." Pursuant to this consent, the railroad was duly constructed, and the company, and its successor, the Public Service Railway Company (which is clothed with all its rights and privileges and charged with the performance of all its duties and obligations), have ever since kept the pavement between the rails and for a space of two feet on the outside thereof in good repair. Some time before the institution of the present suit the municipality decided to improve Montgomery street by taking up and removing the whole of the paving thereon and by repaving the same with a new granite block pavement laid with cement mortar, &c., at the joints. Having done this, they called upon the Public

Service Railway Company to pay so much of the cost of this new pavement as was embraced between the company's tracks and the two feet on each side thereof, and the company thereupon refused to comply with the demand.

The city, conceiving that under its conditional consent the defendant company was required to pay so much of the cost of repaving as was demanded of it, instituted the present action. The trial resulted in a judgment in favor of the railway company, and the city has appealed.

The single question involved in the determination of this litigation is whether the obligation on the part of the railway company to keep the pavement between its rails and for a space of two feet on the outside thereof in good repair, at its own expense and according to the requirments of the governing body of the municipality, imposes upon it the duty of paying a proportionate part of the cost of a new pavement whenever, in the judgment of the municipal authorities, it is to the interest of the municipality that such improvement should be made. This question is not a novel one in this court. In *Dean* v. *Paterson,* 67 *N. J. L.* 199, the Supreme Court held that the provision of an ordinance requiring a street railway company to keep and maintain the portion of the street inside its rails, and for a designated distance outside of them, in good and sufficient repair, did not carry with it the obligation to pay a proportionate part of the expense of repaving, and this conclusion was approved, on review, by this court. 68 *Id.* 664. In the later case of *Freeholders* v. *Jersey City, Hoboken and Paterson Street Railway Co.,* 85 *Id.* 179, the matter presented for adjudication was essentially the same as that considered and decided in *Dean* v. *Paterson, supra,* the obligation of the company there being to "keep in repair, to the satisfaction of the local authorities, the paving, planking or other surface material," at its own expense; and we there reiterated the doctrine of the earlier case, holding that the duty of keeping the street in repair did not impose upon the company any obligation to contribute to the cost of repaving such street.

Counsel for the city concedes that these cases are controlling, unless the principle there laid down is not applicable to

the situation disclosed in that now under review. But he argues it is not applicable, for the reason that (as he claims) the recited condition in the present ordinance imposes upon the street railway company two separate and distinct duties— "(1) to keep the pavement between the rails and for a space of two feet on the outside thereof in good repair, at their own expense; (2) to keep the pavement between the rails and for a space of two feet on the outside thereof according to the requirements of the common council or their officers;" and he asserts that this second duty carries with it an obligation to pay the cost of repaving the street whenever the municipality shall consider such action for the best interests of the people of the city.

The difficulty with the argument is that the ordinance does not in fact impose two distinct and separate duties, but a single one, and that is "to keep the pavement in good repair." This it must do, not at the expense of the municipality, but at its own cost. It must also, in making the requisite repairs from time to time, not arbitrarily select such method as it may deem advisable, but comply with the requirements of the municipal body in that regard. In other words, both the method and the character of the repair are to be determined by the municipality if it shall so elect, and, when it has so elected, the street railway company must comply with the municipal requirements in making such repairs.

Supplementing his argument as to the effect which should be given to the words "according to the requirements," &c., counsel contends that, even if they should be held to be applicable solely to the obligation to repair, they, nevertheless, impose upon the street railway company the duty of repaving when the requirements of the city "demand such a repair," *i. e.*, when the municipal body considers that the tearing up of an old pavement and the substituting of a new one in its place is for the best interests of the municipality. The complete answer to this contention is that it is directly in the face of the two earlier decisions already referred to. It may be added, for the satisfaction of counsel, that the laying of a new pavement upon a public highway is not considered a

"repair" under our system of jurisprudence. The repaving of a highway is a public improvement, the cost of which may be imposed upon abutting owners to the extent to which their property is specially benefited by the improvement (*Jelliff* v. *Newark,* 48 *N. J. L.* 101; *affirmed,* 49 *Id.* 239), while the cost of the repair of an existing pavement is not an improvement assessable upon property owners to the extent of the benefit resulting from that repair, but is payable out of the municipal treasury from funds raised by taxation. *Hurley* v. *Trenton,* 66 *Id.* 538; *affirmed,* 67 *Id.* 350.

The judgment under review was based upon the conclusion of the trial court that the present case was controlled by our decisions in Dean *v.* Paterson and Freeholders *v.* Jersey City, &c., Railway Co. This conclusion was sound, and the judgment under review must be affirmed.

WHITE, J. (dissenting). For the reasons stated in a concurring opinion, which I filed in *Freeholders* v. *Jersey City, Hoboken and Paterson Street Railway Co.,* 85 *N. J. L.* 179, I do not think the case of *Dean* v. *Paterson,* 67 *Id.* 199, to be here controlling; and for the reason also pointed out in that concurring opinion as the true ground (in my judgment) for the decision of the court in *Freeholders* v. *Jersey City, Hoboken and Paterson Street Railway Co., supra,* I do not think that case forms a proper basis for the application of the doctrine of *stare decisis* to the present case.

I, therefore, feel at liberty to favor the adoption by this court of the views now almost universally adopted by the courts of other states upon the subject here involved, which views seem to me, not only logical, but eminently fair and proper of application. It is for this reason that my vote is to reverse in the present case.

*For affirmance*—THE CHIEF JUSTICE, TRENCHARD, MINTURN, KALISCH, BLACK, LLOYD, VAN BUSKIRK, McGLENNON, KAYS, JJ.    9.

*For reversal*—WHITE, J.    1.